**NOT FOR PUBLICATION**
**SEALED AND CONFIDENTIAL**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY, | |
| Plaintiff/Judgment Creditor, | 12-CV-5685 (ES) |
| v. | 12 Misc. 00094 (ES) |
| KOLON INDUSTRIES, INC. A/K/A KOLON CORPORATION, | |
| Defendant/Judgment Debtor, | **OPINION** |
| KOLON USA, INC., | |
| Garnishee. | |

**SALAS, District Judge**

**I.    INTRODUCTION**

This matter comes before the Court on Plaintiff, E.I. du Pont de Nemours and Company's ("DuPont" or the "Judgment Creditor"), application for summary turnover order pursuant to Federal Rule of Civil Procedure 69(a)(1) and N.J.S.A. 2A:17-63 (the "Application"). (D.E. No. 30-3, Pl. J. Creditor's Mem. of Law in Supp. of its Appl. by Order to Show Cause for Summ. Turnover Order Pursuant to N.J. Stat. 2A:17-63 Against Garnishee Kolon USA, Inc. ("Pl. Mov. Br.")). Kolon USA, Inc. ("KUSA" or the "Garnishee") opposes the Application. (D.E. No. 32, Garnishee's Opp'n to Appl. for Summ. Turnover Order ("Opp. Br.")). This matter is filed under a civil case number and a miscellaneous case number: No. 12-cv-5685 and No. 12-mc-94.[1] The Court has considered the parties' submissions made in support of and in opposition to the instant

---

[1] Unless stated otherwise, docket entries cited in this opinion refer to Case No. 12-cv-5685.

NOT FOR PUBLICATION
SEALED AND CONFIDENTIAL

Application.[2]  The Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  This Court decides the Application on the papers without oral argument under Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, DuPont's Application for a turnover order is GRANTED.

II.     BACKGROUND

The instant matter stems from DuPont's Application for a turnover order of Defendant Kolon Industries, Inc. a/k/a Kolon Corporation's ("Kolon" or the "Judgment Debtor") property held by KUSA.  Kolon, the Judgment Debtor, a global company based in the Republic of Korea, manufactures and markets industrial materials, chemicals, optical films, and fibers and fabrics for the apparel and fashion industries.  KUSA, the Garnishee, is a wholly-owned subsidiary of Kolon that is located in New Jersey.  KUSA purchases goods from Kolon, which it then sells throughout the United States.  KUSA currently has an outstanding debt of $3,569,038.24 in business accounts payable ("Debtor Property") owed to Kolon.

On November 22, 2011, DuPont obtained a judgment in the amount of $920,250,000.00 (the "Judgment") against Kolon in the United States District Court for the Eastern District of Virginia.  (D.E. No. 30-4, Final J. on Count One ("Final J.")).  On April 10, 2012, DuPont obtained leave to register and execute the Judgment outside of the United States District Court for the Eastern District of Virginia.  (D.E. No. 30-4, Order).  Pursuant to 28 U.S.C. § 1963, DuPont registered the Judgment in this Court.  (*See* D.E. No. 1, Clerk's Cert. of a J. To Be Registered in Another Dist. ("Registration of J.")).  Then, on August 1, 2013, DuPont obtained a levy of the Judgment Debtor's property by having a Writ of Execution ("Writ") served on the

---

[2] This Court has also considered DuPont's reply brief.  (D.E. No. 34, Pl. J. Creditor's Reply Mem. of Law in Supp. of its Appl. by Order to Show Cause for Summ. Turnover Order Pursuant to N.J. Stat. 2A:17-63 Against Garnishee Kolon USA, Inc. ("Pl. Reply Br.")).

2

**NOT FOR PUBLICATION**
**SEALED AND CONFIDENTIAL**

Garnishee, KUSA. (D.E. No. 30-4, Decl. of Matthew I. Menchel in Supp. of Pls.' Appl. for Summ. Turnover Order ¶ 6; *see also* D.E. No. 30-4, Ex. F, Process Receipt & Return served on Aug. 1, 2012; D.E. No. 15, Process Receipt & Return served on Aug. 1, 2012).[3]

## III. DISCUSSION

Pursuant to Fed. R. Civ. P. 69(a)(1), DuPont may avail itself to New Jersey state laws and procedures in seeking to enforce the Judgment. *See* Fed. R. Civ. P. 69(a)(1) (stating that the "procedure on execution . . . must accord with the procedure of the state where the court is located"); *see also United States v. Yazell*, 382 U.S. 341, 355 n.31 (1966) (noting that under Rule 69, "state execution procedure seems to be applied without question"). DuPont seeks to execute the Judgment upon KUSA pursuant to N.J.S.A. 2A:17-63, which provides:

> After a levy upon a debt due or accruing to the judgment debtor from a third person, herein called the garnishee, the court may upon notice to the garnishee and the judgment debtor, and if the garnishee admits the debt, direct the debt, to an amount not exceeding the sum sufficient to satisfy the execution, to be paid to the officer holding the execution or to the receiver appointed by the court, either in 1 payment or in installments as the court may deem just.

N.J.S.A. 2A:17-63. Thus, the statute sets forth three requirements before the Garnishee can be ordered to turn over the Debtor Property by directing to the Judgment Creditor the repayment of debt owed to the Judgment Debtor: (1) "notice to the garnishee and the judgment debtor;" (2) a "levy upon a debt due or accruing to the judgment debtor from [the garnishee];" and (3) "the garnishee admits the debt." N.J.S.A. 2A:17-63.

---

[3] Since the filing of DuPont's moving papers, a second Writ was served on KUSA on November 26, 2012. (Case No. 12-mc-0094, D.E. No. 38, Process Receipt & Return served on Nov. 26, 2012).

**NOT FOR PUBLICATION**
**SEALED AND CONFIDENTIAL**

DuPont has satisfied the three requirements of N.J.S.A. 2A:17-63. First, DuPont has accorded valid notice to Kolon and KUSA. Second, DuPont has obtained a valid levy upon the Debtor Property. Finally, KUSA has admitted the debt.

The Judgment Debtor and the Garnishee have both received adequate notice. Under New Jersey law, there is valid notice of an application for a turnover order if the parties were served notice in accordance with New Jersey rules regarding service of process. *See Morristown Mem'l Hosp. v. Caldwell*, 775 A.2d 34, 35 (N.J. Super. Ct. App. Div. 2001). DuPont served the Notice of Execution on the Garnishee KUSA on June 19, 2012. (D.E. No. 30-4, Ankita Chaudhary July 2, 2012 Aff. of Serv. ("Chaudhary Aff.") ¶¶ 2-4). Thus, KUSA had notice of the issuance of the Writ of Execution on that date. (D.E. No. 30-4, June 14, 2012 Notice of Execution; *see also* D.E. No. 10-2, Ex. D, June 14, 2012 Notice of Execution).

Further, in accordance with N.J. Ct. R. 1:5-2,[4] DuPont served both Kolon and KUSA on August 3, 2012 by sending a copy of the Writ of Execution and the Proof of Service by the United States Marshal via electronic mail to their counsel. (D.E. No. 30-4, Aug. 3, 2012 Email; Matthew I. Menchel Aug. 13, 2012 Certificate of Serv. ("Menchel Certif.") 1-2). Pursuant to this Court's conference and directive on August 8, 2012, Plaintiff also served a copy of its Application for a turnover order on the Judgment Debtor and the Garnishee with notice of the August 13, 2012 hearing.[5] (D.E. No. 18, Aug. 8, 2012 Mins. of Proceedings; D.E. No. 30-4, Menchel Certif. 1-2; D.E. No. 32-1, Decl. of Glenn D. Dassoff ("Dassoff Decl.") ¶ 5). DuPont also caused a process server to personally deliver a copy of the Application to the Garnishee,

---

[4] New Jersey Court Rule 1:5-2 provides for the manner of service upon attorneys in civil actions.
[5] At 5:57 a.m., DuPont's counsel emailed KUSA's counsel to inform him that the Court had scheduled a hearing on the Application for 3:00 p.m. on the same day. (D.E. No. 32-1, Dassoff Decl. ¶ 5).

4

with a specific instruction that the delivery be made before 9:00 a.m. of August 13, 2012, or as soon as the Garnishee opens for business on the same day.  (D.E. No. 30-4, Menchel Certif. 2).

Kolon and KUSA's counsel disputes receiving notice on August 3, 2012 because he was away in South Korea.  (D.E. No. 32-1, Dassoff Decl. ¶ 4).  Counsel for the Judgment Debtor and Garnishee, however, does not dispute being served with the instant Application on August 13, 2012.  (*Id.* ¶ 5).  The Garnishee received notice on June 19 and August 13, 2012, and was served with the Writ on August 1, 2012.  (D.E. No. 30-4, Chaudhary Aff. ¶¶ 2-4; D.E. No. 32-1, Dassoff Decl. ¶ 5; D.E. No. 15, Process Receipt & Return served on Aug. 1, 2012).  The Garnishee and Judgment Debtor also arguably had notice on August 3, 2012.  (D.E. No. 30-4, Aug. 3, 2012 Email; Menchel Certif. 1-2).  Even if the Court were to accept the Judgment Debtor's position that it did not have notice on August 3, 2012, the Judgment Debtor received notice by August 13, 2012.  Therefore, both Kolon and KUSA received adequate notice.

Next, DuPont has effectuated a valid levy on the Debtor Property held by KUSA.  To effect a levy under New Jersey law, a judgment creditor must obtain a Writ of Execution directing an officer of the court to levy.  *See* N.J. Ct. R. 4:59-1(a) ("Process to enforce a judgment or order for the payment of money . . . shall be a writ of execution . . . ."); *Cameron v. Ewing*, 38 A.3d 611, 613 (N.J. Super. Ct. App. Div. 2012).  In the case of intangible property not evidenced by negotiable instruments (such as the instant Debtor Property which are accounts payables), the levy is complete when the officer serves a certified copy of the writ.  *See* N.J. Ct. R. 4:60-7(e).[6]  DuPont obtained a Writ against KUSA and a U.S. Marshal served it on KUSA.  *See supra* n.6.  Accordingly, there exists a valid levy on Kolon's property held by KUSA.

---

[6] N.J. Ct. R. 4:60-7 provides that the "sheriff shall make the levy within 30 days from the date of the writ."  Here, a Writ was issued as to KUSA on June 13, 2012, (D.E. No. 4), and the Sheriff served it on KUSA on August 1, 2012, (D.E. No. 15).  Although neither party raises the fact that

**NOT FOR PUBLICATION**
**SEALED AND CONFIDENTIAL**

Garnishee KUSA has admitted the debt it owes to Judgment Debtor, both by the deposition testimony of its President and through its own accounts payable records. (D.E. No. 30-4, Tr. of Videotaped Dep. of Jong Sik Yang ("Yang Dep. Tr.") at 150-51; D.E. No. 30-4, Doc. Bearing Bates Nos. SDNY_KUSA 00000001-02 ("KUSA A/P List")). In his deposition, KUSA's President stated, "The money that we have to give to Kolon Industries is approximately $3.5 million." (D.E. No. 30-4, Yang Dep. Tr. at 150). That statement clearly constitutes an admission of the debt. *See Benianti v. Hinchliffe*, 20 A.2d 64, 66 (Even "where the garnishee does not expressly admit the debt but fails to deny it or stands without answer upon that question at the hearing, the failure to deny is tantamount to an admission of its existence."). KUSA further admitted its debt when it stated that it "does not dispute its contingent liabilities due to Kolon in the amount of $3,569,038.24." (D.E. No. 32, Opp. Br. 2). Because KUSA admitted its debt to Kolon, the third requirement of N.J.S.A. 2A:17-63 is also satisfied.

KUSA argues that its liabilities are uncertain and contingent because they stem from 63 separate transactions with a payment term of 150 days and are not due until their respective dates of maturity (ranging from October 15 to December 6, 2012). (D.E. No. 32-2, Decl. of Jong Sik Yang in Support of Garnishee's Opp'n to Appl. for Summ. Turnover Order ("Yang Decl.") ¶¶ 3, 4). KUSA also argues that the debt is immune from levy because KUSA has the option to repay

---

the levy was served outside the thirty-day period, this Court observes that a second Writ was issued as to KUSA on October 26, 2012, (D.E. No. 37), which thirty-day period would have expired on Sunday, November 25, 2012. Because the end date fell on a Sunday, the U.S. Marshall properly served it on Monday, November 26, 2012, (D.E. No. 38). *See* N.J. Ct. R. 1:3-1. Accordingly, there was a valid levy on November 26, 2012. The Court further notes that Kolon and KUSA had ample opportunity to contest the levy and raise defenses in opposition to the Application for a turnover order. The Court finds that relaxation of the time requirements under N.J. Ct. R. 4:60-7 does not infringe on Kolon and KUSA's due process rights. *See Izzo v. Izzo*, 2008 WL 482341, at *1 (Feb. 20, 2008) ("The technical non-compliance with the strict time requirements of the court rules did not infringe in any way upon defendant's due process rights to contest the levy and turnover of funds.").

its debts earlier than the 150-day term for an unspecified discount. (D.E. No. 32-2, Yang Decl. ¶ 5).

Under New Jersey law, a debt is uncertain and contingent when the debt "may never become payable" because certain preconditions must be met before it can become payable. *Cohen v. Cohen*, 20 A.2d 594, 596 (N.J. 1941) (finding that a widow's contingent life insurance benefit was not garnishable because the benefit was payable only if the widow was still alive by a certain date). The $3,569,038.24 debt here is undisputed. (D.E. No. 30-4, Yang Dep. Tr. at 150-51). KUSA has not provided any evidence that there are circumstances in which the $3,569,038.24 debt owed to Kolon "may never become payable."[7] *Cohen*, 20 A.2d at 596.

Moreover, a debt is not immune from garnishment only because one can repay it ahead of schedule at an unspecified discount. If a debt is "liquidated and certain in [its] existence," it is

---

[7] The Garnishee relies on *Sears, Roebuck & Co. v. Romano*, 482 A.2d 50 (N.J. Super. Ct. Law Div. 1984), which held that an unexercised line of credit that provides overdraft protection to a checking account was too uncertain and contingent to be levied. In *Sears*, however, the dispute centered on an unexercised line of credit, and "[t]he condition precedent to the money being presently due, a [withdrawal] on the account, ha[d] yet to occur." 482 A.2d at 52-53. The *Sears* court stated, "[T]he Legislature did not contemplate demand loans, contractual overdraft privileges, or Advance Loan Agreements when it enacted rights and credit garnishment." *Id.* at 52. KUSA's obligation to pay its debts is distinguishable from an *unexercised* line of credit that carries no repayment obligation. Here, KUSA exercised its line of credit from Kolon, and an *exercised* line of credit is subject to levy. *See Cameron*, 38 A.3d at 618-19.
  KUSA also cites *Cameron* for the proposition that "the legislative purpose of New Jersey's execution statue [sic] was to reach debts provided they were due 'at not less than the prescribed minimum rate[.]'" (D.E. No. 32, Opp. Br. 3). There is no evidence to suggest that Kolon ever agreed to installment payments of "not less than [a] designated rate." *See Passaic Nat'l Bank & Trust Co. v. Eelman*, 183 A. 677, 679 (N.J. 1936). Rather, KUSA owes sixty-three payments at sums that are certain and the option to negotiate a discount is speculative. *Cameron* held that the term "debt" was to be accorded its ordinary legal meaning, as well as "that which one person is bound to pay to another under *any* form of obligation." 38 A.3d at 616 (citation & internal quotation marks omitted).
  Misleadingly, KUSA also cites to the dissenting opinion in *Picker v. City of Bayonne*, 158 A.2d 692, 698 (N.J. Super. Ct. App. Div. 1960) (Haneman, J., dissenting), which states that an uncertain and contingent debt is not subject to levy. (*See* D.E. No. 32, Opp. Br. 3). This Court finds that the $3,569,038.24 debt owed to Kolon is neither uncertain nor contingent.

subject to execution.  *Canger v. Froysland*, 662 A.2d 1034, 1037 (N. J. Super. Ct. Ch. Div. 1994).  This rule applies even if KUSA seeks to characterize its debts as a "credit term." (D.E. No. 32-2, Yang Decl. ¶ 5; *Cameron*, 38 A.3d at 618-19 ("[A]n exercised line of credit" is subject to execution, despite the possibility of an earlier repayment at a time of the debtor's choosing, because "the recipient of a line of credit is indebted to the financial institution extending it[.]"). The repayment of KUSA's sixty-three debts, therefore, is subject to execution and payable as KUSA's debts become due.  *See Eelman*, 183 A. at 679 (A garnishable debt is "an obligation to pay a sum certain, or a sum which may be ascertained by a simple mathematical calculation from known facts[.]").[8]  Here, the sixty-three debts have matured and became due between October 15, and December 6, 2012 (D.E. No. 30-4, KUSA A/P List).  Therefore, this issue is now moot.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for turnover is GRANTED.  An appropriate order shall accompany this opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[8] *See also Brunskill v. Stutman*, 8 Cal. Rptr. 910, 916 (Cal. Dist. Ct. App. 1960) ("Where there is no contingency as to the garnishee's liability, the only contingency being as to the amount thereof, and where the amount of the liability, is capable of definite ascertainment in the future, there is no such contingency as prevents garnishment of the claim . . . .").